Filed 11/9/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 214

State of North Dakota, Plaintiff, Appellee

 and Cross-Appellant

v.

Michael Jermaine Walker, Defendant, Appellant

 and Cross-Appellee

No. 20100112

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Gary H. Lee, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Rozanna C. Larson, State’s Attorney, Courthouse, P.O. Box 5005, Minot, N.D. 58702-5005, for plaintiff, appellee, and cross-appellant.

Benjamin C. Pulkrabek, 402 First Street NW, Mandan, N.D. 58554-3118, for defendant, appellant, and cross-appellee.

State v. Walker

No. 20100112

 

Sandstrom, Justice.

[¶1] Michael Walker appeals after a jury found him guilty of robbery.  The State cross-appeals the district court’s conclusion that Walker’s actions do not fit the requirements under the mandatory minimum sentencing statute.  We affirm the criminal judgment and hold the State’s cross-appeal is not authorized.

 

I

[¶2] Daniella Thompson was employed by Minot Junior Golf as the site manager for its charitable gaming operation at the Hooterville Bar in Ruthville, North Dakota.  One of the employees she supervised was Dillon Ouellette.  At the end of the night of May 1, 2009, Thompson and Ouellette were the only employees working at this gaming site.  The two went through the usual procedures to shut down the operation around bar-closing time before leaving.

[¶3] Ouellette and Thompson walked out to the parking lot with the items they needed to take to their employer’s office.  Among these items were the slips accounting for all gaming activity and the cash collected and used to run the various games at the bar.  Everything was stored in a duffel bag carried by Thompson.

[¶4] Soon after they left the bar, Ouellette heard Thompson call out his name.  He turned and found a man ready to attack him, with another man going to Thompson.  Ouellette wrestled back at first, thinking it was a joke, but then saw the man had a knife and realized the gravity of the situation.  The assailant kicked Ouellette in the groin, knocking him to the ground.  The other man took the duffel bag from Thompson.

[¶5] David Mosley and Michael Walker later admitted in court proceedings they were the attackers, and Thompson was shown to be involved in the robbery as well.  Mosley, who was Thompson’s boyfriend, pled guilty to the crime of robbery and admitted he was the man who attacked Ouellette.  Testimony and exhibits showed Thompson helped coordinate the attack through text messages.  She admitted picking up Mosley and Walker after the robbery, as well as storing knives and other items for them.

[¶6] In his testimony at trial, Walker acknowledged his presence at the robbery and made many other admissions.  He admitted helping to plan the robbery with Mosley and Thompson.  He admitted he took the gaming operation’s duffel bag from Thompson.  He admitted dividing up the money with Mosley and other friends.  He admitted dumping evidence of the robbery in a river.  Finally, he admitted trying to conceal his involvement when questioned by police.

[¶7] The court instructed the jury to find Walker guilty of robbery if it found that any combination of actions by Walker and Mosley, his accomplice actually present, satisfied the elements of robbery.  The evidence showed it was Mosley alone who attacked Ouellette.  Walker carried out his role in the attack by taking the duffel bag from Thompson.  While the district court held the elements of robbery could be satisfied jointly by accomplices, it concluded the mandatory minimum sentence provisions of N.D.C.C. § 12.1-32-02.1 require all elements be satisfied by each defendant.  Walker was convicted of robbery and sentenced to six years in prison with two years suspended.

[¶8] Walker contends conviction of robbery requires a defendant satisfy all elements of the offense personally.  Walker appeals, arguing that because he did not personally satisfy all those elements, the jury instructions were improper and the district court erred by denying his motion for judgment of acquittal.  The State cross-

appeals, arguing the actions of Walker’s accomplice who was actually present should be considered in imposing the mandatory sentence under N.D.C.C. § 12.1-32-02.1.

[¶9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Walker’s appeal was timely under N.D.R.App.P. 4(b).  This Court has jurisdiction over Walker’s appeal under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29-28-06.  Whether or not the State may challenge the sentence by cross-appealing the criminal judgment is an issue in this case.

 

II

[¶10] Walker contends the district court’s jury instructions were improper and his motions for acquittal should have been granted.  The jury instruction central to Walker’s argument is found under the title “Accomplice Actually Present”:

[W]hether all acts necessary to establish all the essential elements of the offense charged were actually committed by Michael Walker is not required.  The State’s burden of proof is satisfied if the evidence proves, beyond a reasonable doubt, that all acts necessary to establish all of the essential elements of the offense charged were committed by either Michael Walker, or by David Mosley, an accomplice actually present.

Walker’s lawyer repeatedly objected to this legal theory and this instruction at trial.  Walker asks this Court to construe N.D.C.C. § 12.1-22-01 as structured in steps.  Step 1 would be to determine whether the defendant personally satisfied all elements of robbery listed in section 12.1-22-01(1).  Step 2, section 12.1-22-01(2), would be considered only if the defendant has personally satisfied all elements of robbery.  Under Walker’s argument, the only reason for a court to consider an accomplice actually present is to decide whether a robbery should be elevated from a class C to a class B felony.

[¶11] The focus of Walker’s argument is solely on the robbery statute, N.D.C.C. § 12.1-22-01.  He stresses a strictly literal interpretation of section 12.1-22-01(1) must be employed:  “A person is guilty of robbery if, in the course of committing a theft, he inflicts or attempts to inflict bodily injury upon another or threatens or menaces another with imminent bodily injury.”  The State does not dispute that during the course of the robbery, Walker never physically attacked Ouellette, who was the only person at the scene not criminally involved in the robbery’s execution.  The fact that Mosley and Walker acted as accomplices in carrying out the robbery, however, requires consideration beyond the language of N.D.C.C. § 12.1-22-01.  The legal ramifications of a person acting with one or more accomplices in the commission of a crime is found in N.D.C.C. § 12.1-03-01(1):

A person may be convicted of an offense based upon the conduct of another person when:

a. Acting with the kind of culpability required for the offense, he causes the other to engage in such conduct;

b. With intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so; or

c. He is a coconspirator and his association with the offense meets the requirements of either of the other subdivisions of this subsection.

A person is not liable under this subsection for the conduct of another person when he is either expressly or by implication made not accountable for such conduct by the statute defining the offense or related provisions because he is a victim of the offense or otherwise.

[¶12] The plain language of N.D.C.C. § 12.1-03-01, along with its placement at the beginning of the criminal code and the rules of interpretation found in sections 1-02-

02 and 1-02-07, demonstrates its applicability throughout the code.  The intended effects of this broadly applicable statute are also reflected in part in the drafters’ official comments to the 
Working Papers of the National Commission on Reform of Federal Criminal Laws
 (1970) (“
Working Papers
”).  
See
 
State v. Blunt
, 2010 ND 144, ¶ 47, 785 N.W.2d 909 (VandeWalle, C.J., concurring and dissenting) (“The official commentary to the proposed Federal Criminal Code and the 
Working Papers
 are persuasive in interpreting the intent of our criminal code . . . .”).  The 
Working Papers
 were developed in conjunction with the proposed federal criminal code, on which Chapter 12.1-03 and the rest of the North Dakota criminal code were based.  
Id.
  Incorporating the accomplice liability theory developed in 
Pinkerton v. United States
, 328 U.S. 640 (1946), the 
Working Papers
 state the effect of the accomplice liability statute:  “The objective . . . is to declare that criminal liability may depend in whole or in part upon the behavior of another, and to set out those situations in which this result occurs.”  I 
Working Papers
, at 153.  Further, the 
Working Papers
 reflect that those charged under an accomplice theory are to be treated as the principal actor in the crime.  
Id.
 at 154.  “The policy argument favoring 
Pinkerton
 liability has been stated as being that the criminal acts are ‘sufficiently dependent upon the encouragement and material support of the group as a whole to warrant treating each member as a causal agent.’”  
Id.
 at 157 (citation omitted).

[¶13] 
State v. Dubs
, 390 N.W.2d 41 (N.D. 1986), illustrates the application of the statute.  Dubs’s friend used a weapon to hold up a passerby and steal the bag he was carrying.  
Id.
 at 42.  Dubs’s actions consisted only of watching the robbery take place, asking the victim for the time, and fleeing with his friend when the police arrived.  
Id.
  Despite not having actively threatened the victim or personally taken his property, Dubs was convicted of robbery.  
Id.

[¶14] The defendant was also convicted of robbery in 
State v. Azure
, 243 N.W.2d 363 (N.D. 1976).  In that case, Azure’s accomplice stepped out of their car and assaulted a woman to take her purse.  
Id.
 at 363-64.  Azure waited in the car for the robbery to take place, then drove his friend and the stolen property away from the scene.  
Id.
  Despite never coming in contact with the victim, Azure was convicted of robbery.  
Id.
 at 367.

[¶15] Walker’s conduct in this case is a classic example of accomplice liability contemplated in N.D.C.C. § 12.1-03-01(1).  Mosley executed the physical attack portion of the robbery, while Walker simultaneously obtained the gaming money that motivated the crime in the first place.  Walker’s actions with an accomplice necessitated that he be treated as a principal actor in the crime, and the district court correctly framed the context of those actions in its jury instructions.  We affirm Walker’s conviction for robbery.

 

III

[¶16] The State cross-appeals the district court’s sentencing decision, arguing Walker is subject to the mandatory minimum sentencing requirements of N.D.C.C. § 12.1-32-

02.1.

[¶17] Before considering the merits of an appeal, we first decide whether this Court has jurisdiction.  
Investors Title Ins. Co. v. Herzig
, 2010 ND 138, ¶ 23, 785 N.W.2d 863.  “The right to appeal is governed solely by statute, and we will take notice of the lack of jurisdiction and dismiss an appeal if there is no statutory basis to hear the appeal.”  
Id.

[¶18] The statute granting the State limited rights to appeal in a criminal matter is N.D.C.C. § 29-28-07.  The State argues it may appeal Walker’s sentence under section 29-28-07(4):  “An appeal may be taken by the state from [a]n order made after judgment affecting any substantial right of the state.”  The State relies on 
State v. Wika
, 1998 ND 33, 574 N.W.2d 831, in arguing it may cross-appeal because sentencing is a substantial right of the State.

[¶19] We note first the language of N.D.C.C. § 29-28-06(5), which is nearly identical to that in section 29-28-07(4).  The only difference is the adjustment in language to make the statute apply to a defendant rather than the State:  “An appeal may be taken by the defendant from [a]n order made after judgment affecting any substantial right of the party.”  N.D.C.C. § 29-28-06(5).  Our previous decisions on a defendant’s rights to appeal under this statute are therefore highly persuasive in evaluating the State’s rights to appeal.

[¶20] It is unclear whether the State is attempting to directly appeal Walker’s sentence or if it is attempting to appeal the district court’s oral order denying the imposition of the mandatory minimum sentence.  In either case, the State’s appeal is improper.  The district court’s oral order denying imposition of the mandatory minimum sentence under N.D.C.C. § 12.1-32-02.1 came before judgment was entered in this case.  Section 29-28-07(4), N.D.C.C., permits the State to appeal only orders made 
after
 judgment.  Therefore, the State may not appeal this pre-judgment order of the district court.

[¶21] The State is also prohibited from directly appealing Walker’s sentence.  We have held that defendants may not appeal a sentence alone under N.D.C.C. § 29-28-

06(5).  
City of Riverside v. Smuda
, 339 N.W.2d 768, 769 (N.D. 1983).  “An examination of Section 29-28-06, N.D.C.C., reveals no provision authorizing a defendant to take an appeal from a sentence imposed by a county court.”  
Id.
 (footnote omitted).  The language of N.D.C.C. § 29-28-07(4) is identical to section 29-28-06(5) except for switching the names of the parties.  Defendants cannot appeal a sentence alone under the “affecting substantial rights” language, and neither can the State.

[¶22] While a defendant cannot directly appeal a sentence under N.D.C.C. § 29-28-

06(5), he can, however, appeal an order denying a correction of an illegal sentence using that same statute.  
State v. Nace
, 371 N.W.2d 129, 131 (N.D. 1985).  
See also
 
State v. Owens
, 1997 ND 212, ¶ 8 n.3, 570 N.W.2d 217 (“The holding in 
Nace
 has been superseded in part by legislation, but its holding about challenging an illegal sentence is still sound.”) (citation omitted).  The State’s proper recourse in this case would have been to move to correct an illegal sentence under N.D.R.Crim.P. 35(a).  Any order on the State’s motion would have come after judgment, and could then have properly been appealed under N.D.C.C. § 29-28-07(4).

[¶23] An interested party must move to correct an illegal sentence before an appealable order may be issued under Rule 35(a).  Under Rule 35(a), N.D.R.Crim.P., “[t]he sentencing court may correct an illegal sentence at any time,” and a proper motion should first be made to the district court to correct an illegal sentence.  The explanatory note to Rule 35 makes frequent references to motions under the rule, convincing us that one is required (“A motion under the rule is essentially a plea for leniency . . . .”; “A motion for reduction of sentence must comply with Rule 47 . . . .”; “Rule 35 was amended . . . to require that notice of a motion for correction or reduction of sentence be given to the parties . . . .”).

[¶24] The State has the same power to move to correct an illegal sentence under Rule 35(a) as a defendant.  
Wika
, 1998 ND 33, ¶ 12, 574 N.W.2d 831.  
Wika
 makes it clear the State must move to correct an illegal sentence to obtain an appealable Rule 35(a) order.  “On its face, the rule does not prohibit the State 
from bringing a motion
 for correction of an illegal sentence.”  
Id.
 at ¶ 11 (emphasis added).  “While it is a rare occurrence for the State or the government 
to bring a motion
 for correction, it is clear that it is allowed.”  
Id.
 at ¶ 12 (emphasis added).

[¶25] In holding the State has the same ability as a defendant to move to correct an illegal sentence, we noted Rule 35 “balances the scales of justice.”  
Wika
, 1998 ND 33, ¶ 11, 574 N.W.2d 831 (quoting 
United States v. Henry
, 680 F.2d 403, 408 (5th Cir. 1982)).  Consistent with this rationale, it logically follows that the State and the defendant share equal rights under Rule 35.  The benefits and burdens of the Rule are the same for both parties.  As evidenced by 
Smuda
 and 
Nace
, to correct an illegal sentence, defendants can appeal only an order denying a Rule 35 motion.  If defendants are required to move to correct an illegal sentence under Rule 35, the State must also do so if the “scales of justice” are to remain balanced.

 

IV

[¶26] The State’s failure to move to correct an illegal sentence under Rule 35(a) has left it without a post-judgment order from which it can properly appeal.  Concurrently, it is prohibited from directly appealing Walker’s sentence under N.D.C.C. § 29-28-07(4).  Therefore, we do not reach the substantive arguments in the State’s cross-appeal.  We affirm the criminal judgment and dismiss the State’s cross-appeal because it lacks a statutory basis on which it can be heard.

[¶27] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.